IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
VALDOSTA DIVISION

| | |
|---|---|
| **KATHERN BENTLEY, et al.**, <br><br> Plaintiffs, <br><br> v. <br><br> **RODNEY BAKER and JEROD BAKER, individually, d/b/a J & R BAKER FARMS, LLC, and/or J & R FARMS PARTNERSHIP**, <br><br> Defendants. | Civil Action No. 7:12-CV-132 (HL) |

### ORDER

This case is before the Court on Defendants' Motion to Dismiss (Doc. 10) and Plaintiffs' Motion to Amend Complaint (Doc. 16). For the reasons discussed below, Defendants' Motion to Dismiss is granted in part and denied in part, and Plaintiffs' Motion to Amend is granted in part and denied in part.

## I.   BACKGROUND

On October 4, 2012, Plaintiffs filed a complaint pursuant to 42 U.S.C. § 1981. They alleged that the Defendants intentionally discriminated against Plaintiffs in their employment contracts based upon their race, national origin, and lack of alienage by imposing discriminatory conditions and terms of employment on them that were not applied to "foreign, Hispanic, Mexican" workers. Plaintiffs also alleged that Defendants violated § 1981 by either discharging or constructively discharging Plaintiffs based upon their race, national origin, and lack of alienage in favor of the Mexican workers.

On February 15, 2013, Defendants filed a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted. Defendants argued that Plaintiffs did not allege sufficient facts to plausibly show a cause of action for race discrimination under § 1981; failed to allege sufficient facts related to their claims of discharge or constructive discharge; and that any claims of national origin and alien discrimination should be dismissed because § 1981's protections do not extend to claims for discrimination based on national origin or alienage.

In response to the motion to dismiss, Plaintiffs filed a motion to amend their complaint pursuant to Federal Rule of Civil Procedure 15. Through their amended complaint, Plaintiffs seek to add further detail to their factual allegations and to withdraw any reference to national origin.

Procedurally the Court must consider the motion to amend first because if the motion is granted, the pending motion to dismiss would be moot. *See, e.g.,* Pintando v. Miami-Dade Hous. Agency, 501 F.3d 1241, 1243 (11th Cir. 2007); Jones Creek Investors, LLC v. Columbia County, Ga., No. CV11-174, 2012 WL 694316, at *3 n. 5 (S.D. Ga. Mar. 1, 2012) (stating that a timely filed amended pleading supersedes the original pleading, and motions directed at superseded pleadings are to be denied as moot).

## II.    ANALYSIS

Rule 15 states, in relevant part, that "a party may amend its pleading only with the opposing party's written consent or the court's leave" and that the "court should

freely give leave when justice so requires." Fed.R.Civ.P. 15(a)(2). "[U]nless a substantial reason exists to deny leave to amend, the discretion of the District Court is not broad enough to permit denial." Shipner v. E. Air Lines, Inc., 868 F.2d 401, 407 (11th Cir. 1989). Some reasons a court may deny a motion to amend include undue delay, undue prejudice to the defendant, and futility of the amendment. *See* Brewer-Giorgio v. Producers Video, Inc., 216 F.3d 1281, 1284 (11th Cir. 2000). Defendants argue that the proposed amendment is futile.

Generally, a "district court may deny leave to amend a complaint if it concludes that the proposed amendment would be futile, meaning that the amended complaint would not survive a motion to dismiss." Christman v. Walsh, 416 F.App'x 841, 844 (11th Cir. 2011) (citation omitted). Thus, Plaintiffs' proposed amendments must be dismissed if they fail to state a claim upon which relief could be granted. Id. (citing Fed.R.Civ.P. 12(b)(6)). To decide whether a complaint states a claim for relief, the court must "accept[ ] the factual allegations in the complaint as true and construe[ ] them in the light most favorable to the plaintiff." Id. (citation omitted). Any claim contained therein must "'state a claim for relief that is plausible on its face.'" Id. (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). "'A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" Id. (quoting Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009)). The complaint "need not include detailed factual allegations,

but it must set forth 'more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.'" Id. (quoting Twombly, 550 U.S. at 555).

Upon review of the proposed amended complaint, and construing the complaint liberally, the Court finds that Plaintiffs have stated a claim as to their § 1981 claims with regard to their employment contracts but have not stated a claim as to their constructive discharge claims. The Court finds that the proposed amendments to the constructive discharge claims are futile. Because the Court ultimately dismisses the constructive discharge claims, it will address those claims in more detail below.

According to the proposed amended complaint, ten Plaintiffs were constructively discharged at various times during the 2010 and 2011 growing seasons. The Court will separately examine the constructive discharge claims asserted by the nine Plaintiffs who worked for Defendants during the Fall 2010 season and the constructive discharge claim asserted by the one Plaintiff who worked for Defendants during the Spring 2011 season.

The threshold for a constructive discharge claim is higher than that for a hostile work environment claim. Hipp v. Liberty Nat'l Life Ins. Co., 252 F.3d 1208, 1231 (11th Cir. 2001), *modified on other grounds*, Anderson v. Cagle's, Inc., 488 F.3d 945 (11th Cir. 2007). A plaintiff claiming constructive discharge must show "a greater severity or pervasiveness of harassment" such that resignation is the only reasonable response. *See* Bryant v. Jones, 575 F.3d 1281, 1298 (11th Cir. 2009).

A constructive discharge claim involves only an objective standard. *See* Hipp, 252 F.3d at 1231. To sustain a constructive discharge claim, a plaintiff must sufficiently

4

allege and show that the defendant imposed working conditions so onerous that a reasonable person in his position would have been compelled to resign. Thomas v. Dillard Dep't Stores, Inc., 116 F.3d 1432, 1434 (11th Cir. 1997). The defendant must also be allowed sufficient time to correct the situation. Kilgore v. Thompson & Brock Mgmt., Inc., 93 F.3d 752, 754 (11th Cir. 1996) ("A constructive discharge will generally not be found if the employer is not given sufficient time to remedy the situation.") "Part of an employee's obligation to be *reasonable* is an obligation not to assume the worst, and not to jump to conclusions too fast." Garner v. Wal-Mart Stores, Inc., 807 F.2d 1536, 1539 (11th Cir. 1987) (emphasis in original). It is difficult to establish constructive discharge if the allegedly onerous conditions lasted for only a short time. Hill v. Winn-Dixie, 934 F.2d 1518, 1527 (11th Cir. 1991).

### A.    Fall 2010 Plaintiffs

Plaintiffs Ryan Buie, Maleah Caldwell, Fiona Dawson, Eric Martin, Lathaca Wheeler, Linda Wheeler, Victor Williams, Jimmy Boatwright, and Tyree Sinclair (collectively the "Fall 2010 Plaintiffs") began work for Defendants on September 27, 2010. Plaintiffs contend all nine of the Fall 2010 Plaintiffs were constructively discharged approximately one week after their start date. The facts alleged in the proposed amended complaint to establish the constructive discharge claims as to the Fall 2010 Plaintiffs are as follows:

> 37.    The first day for the 2010 Plaintiffs began Monday, September 27, at 7 am at the J&R Baker Farms office located some distance from any town and from any Plaintiffs' residence.

38.   The first day consisted of an uncompensated, mandatory orientation. Plaintiffs were not given any hours of work on this day and were not paid for their time attending the orientation.

39.   During the orientation, Plaintiffs were told to arrive at the farm at 7 am on Tuesday, September 28.

40.   After arriving at 7 am on September 28, Plaintiffs were required to wait for more than thirty (30) minutes until Defendants sent a bus to transport them to the fields.

41.   Plaintiffs could not ride to the field earlier because Defendants separated their workforce by citizenship and race, and sent the bus to the field with Mexican workers first, requiring the U.S. workers to wait and ride a bus only with other American workers.

42.   On September 28, Plaintiffs were told that they would not be paid the hourly wage offered in the contract, but instead were falsely told they would be paid only $1 for every bucket of squash that they picked, even if a worker only picked one bucket per hour or per day.

43.   Plaintiffs who complained about this new compensation structure were told it would not be changed.

44.   On September 28, Plaintiffs were also told, for the first time, that they would be subject to a test of their speed in picking squash and would be terminated if they did not pass the test.

45.   During the test period Defendants required Plaintiffs to pick nine buckets of squash in one hour, a production standard that was not a term of their employment contracts.

46.   On information and belief, Defendants did not require their Mexican workers to meet the production standard described in Paragraph 45 and did not subject the Mexican workers to a week of extremely limited work while they were "tested" against the production standard.

47.   While picking squash, Plaintiffs were required to pickup up [sic] an empty bucket from a tractor and return the bucket to the tractor full of squash. The tractor did not follow Plaintiffs and other American workers as they picked.

48. Mexican workers were followed by a tractor, shortening the time to return picked squash to the tractor and get an empty bucket, allowing the Mexican workers to pick squash more quickly than the American workers.

49. On September 28, Plaintiffs worked in the fields for far less than a full day, under two and a half hours, and then were sent home for the day.

50. Mexican workers were still working after Plaintiffs were sent home on Tuesday, September 28 as described in Paragraph 49.

51. In keeping with Defendants' scheme to force Plaintiffs to quit or to strongly indicate they would be fired, and to restrict their compensation. Plaintiffs, after working fewer than two and a half hours on Tuesday, were told that there was no work for them the following day, Wednesday, September 29, but that they should report to work at 7 am on Thursday, September 30.

52. On information and belief, Mexican workers were provided work daily and not just on alternating days.

53. After arriving at the farm at 7 am on September 30, Plaintiffs again waited at least thirty (30) minutes to be transported to the fields after Mexican workers had already been bused to fields to begin work.

54. Plaintiffs again were allowed to work only a short time, fewer than two and [sic] hours, as they were again subject to a test on September 30 and were sent home early for the day.

55. Again, Mexican workers were still working when Plaintiffs were sent home on September 30.

56. On September 30 Plaintiffs were told there was no work the next day, Friday October 1, but they should report to work at 7 am on Saturday, October 2.

57. After arriving at the farm at 7 am on October 2, Plaintiffs waited for approximately one hour before being told there was no work for them that day and they should return home.

58. Through the conduct listed in Paragraphs 34 to 57 Defendants had required Plaintiffs to report to the farm four times but had only provided Plaintiffs compensation for two of these times, and even then, in total had provided Plaintiffs five or fewer hours of total compensation for the week.

59. Plaintiffs Ryan Buie, Maleah Caldwell, Fiona Dawson, Eric Martin, Lathaca Wheeler, and Linda Wheeler reasonably found this combination of false statements about pay, discriminatory job assignment, invented production standards, and threats of termination intolerable and accordingly were constructively discharged because of the conditions described in Paragraphs 34 through 58.

60. On Monday, October 4, the remaining 2010 Plaintiffs again arrived at the farm around 7 am and waited to be transported to the fields after the Mexicans. After working a short time, the American workers were assembled and told that if they had not picked 9 buckets of squash in one hour they were fired.

61. On October 4, 2010, Defendants fired Plaintiffs Kathern Bentley, Jeffrey Adams, Jonathan Daniels, Mary Jo Fuller, Johnny Gary, Denise Hopkins, Danny King, Marcus Moore, Kashonda Walker, Dana Spradley, Margaret Sutton, and Andrea Ware.

62. Plaintiff Victor Williams reasonably found this combination of discriminatory job assignment, invented production standards, false statements about pay, the subsequent termination of nearly all American workers intolerable, and the strong indication that he too would be fired, and accordingly he was constructively discharged because of the conditions described in Paragraphs 34 through 61.

63. A few days after the firings on October 4, Plaintiff Jimmy Boatwright asked H.R. Dir. Booth about hours missing from his paycheck. H.R. Dir. Booth refused to correct Plaintiffs [sic] Jimmy Boatwright's paycheck and told him he should not return to work if he felt his check was wrong. Plaintiff Boatwright, having been subjected to discriminatory job assignment, invented production standards, false statements about pay, termination of most of the American workers, and now incorrect paystubs reasonably founds [sic] these conditions to be intolerable and accordingly was constructively discharged.

64.     Plaintiff Tyree Sinclair was constructively discharged shortly after the firings on October 4 because of the conditions described in Paragraphs 34 through 61, and because American workers continued to be assigned far fewer hours than their Mexican counterparts.

(Doc. 16-1, ¶¶ 37-64).

To summarize, Plaintiffs Buie, Caldwell, Dawson, Martin, Lathaca Wheeler, and Linda Wheeler claim that the working conditions they were faced with for one week were unendurable because: (1) they had to attend unpaid orientation; (2) they twice in one week had to wait 30 minutes for the bus to pick them up; (3) they were only given 5 hours of work while the Mexican workers were given more hours; (4) they were told by an unnamed person that they would only be paid $1 per bucket of squash they picked[1]; (5) on two days they had to pick 9 buckets of squash in an hour or face termination but the Mexican workers did not have to meet this standard; (6) a tractor followed the Mexican workers but not the American workers; and (7) for three days out of the week, they were told there was no work. Plaintiff Williams relies on these same events and the following: (1) on one additional day he had to pick 9 buckets of squash in one hour or be terminated; and (2) 12 other American workers were fired. Plaintiff Boatwright relies on the same events Plaintiff Williams does, and also the alleged fact that the human resources director refused to correct his paycheck and told Plaintiff Boatwright that he should not return to work if he thought the check was wrong. Finally, Plaintiff Sinclair relies on the same events Plaintiff Williams does and also the fact that

---

[1] Notably, Plaintiffs do not alleged that this was in fact how the Fall 2010 Plaintiffs were paid.

American workers continued to be assigned fewer hours than their Mexican counterparts.

As noted above, the inquiry for a constructive discharge is objective: "Did working conditions become so intolerable that a reasonable person in the employee's position would have felt compelled to resign?" Pa. State Police v. Suders, 542 U.S. 129, 141, 124 S.Ct. 2342 (2004). The employee's subjective reaction to the working conditions is irrelevant. Walton v. Johnson & Johnson Servs., Inc., 347 F.3d 1272, 1282 (11th Cir. 2003). The threshold for establishing constructive discharge is "quite high" and requires "pervasive conduct by [the] employer[ ]." Hipp, 252 F.3d at 1231.

The Court finds that the Plaintiffs have not alleged facts sufficient to meet the demanding standard for a constructive discharge claim. The standard for proving constructive discharge is higher than the standard for proving a hostile work environment. Landgraf v. USI Film Prods., 968 F.2d 427, 430 (5th Cir. 1992) ("To prove constructive discharge, the plaintiff must demonstrate a greater severity or pervasiveness of harassment than the minimum required to prove a hostile working environment."), *aff'd*, 511 U.S. 244, 114 S.Ct. 1483, 128 L.Ed.2d 229 (1994). Thus, conditions that do not qualify as a hostile work environment are not sufficiently intolerable to force an employee to quit, which is necessary to establish a constructive discharge claim. To establish a hostile work environment, the plaintiff must show that "the workplace is permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." Harris v. Forklift Sys., Inc., 510 U.S. 17, 21,

114 S.Ct. 367, 126 L.Ed.2d 295 (1993). The facts pleaded by Plaintiffs with respect to the Fall 2010 Plaintiffs do not reach the level of a hostile work environment. A viable hostile work environment claim is the necessary predicate for a constructive discharge claim. If they have not stated a claim for a hostile work environment, Plaintiffs certainly have not stated a constructive discharge claim.  Accordingly, the constructive discharge claims as to the Fall 2010 Plaintiffs must be dismissed.[2]

### B.    Spring 2011

Plaintiff Stephanie Jackson is the one Plaintiff who worked for Defendants in the Spring of 2011. Plaintiffs allege the following in their proposed amended complaint as to Plaintiff Jackson's constructive discharge:

> 69.    In the Spring of 2011, Defendants assigned Plaintiff Stephanie Jackson to less desirable tasks in the packing shed than those assigned to female, Mexican workers.
>
> 70.    Defendants frequently changed Plaintiff Stephanie Jackson's work schedule and sent her home with no work after instructing her to report to work.
>
> 71.    On information and belief, Mexican workers had a regular work schedule and were not sent home for the day without receiving any work.

---

[2] While the Court is in no way condoning Defendants' actions as alleged, the facts presented simply do not demonstrate that quitting was the Fall 2010 Plaintiffs' only option because their working conditions were so intolerable. "Mere dissatisfaction with work assignments, a feeling of being unfairly criticized, or difficult or unpleasant working conditions are not so intolerable as to compel a reasonable person to resign." Heiko v. Colombo Savings Bank, F.S.B., 434 F.3d 249, 262 (4th Cir. 2006) (citation omitted). The fact that the Fall 2010 Plaintiffs only worked approximately one week before quitting also weighs against them. See Hill, 934 F.2d at 1527.

> 72.   Plaintiff Stephanie Jackson reasonably understood her repeatedly being denied work as an indication she would be fired and accordingly she was constructively discharged before the end of the Spring 2011 season.

(Doc. 16-1, ¶¶ 69-72).

As with the Fall 2010 Plaintiffs, the proposed amended complaint fails to state a plausible claim for constructive discharge as to Plaintiff Jackson. Plaintiffs' factual allegations, accepted as true - that Plaintiff Jackson had to do unspecified less desirable tasks[3], that her work schedule was changed, and that she was sent home after not being given any work to do - do not establish the objectively intolerable working conditions necessary to prove a constructive discharge. In addition, there is no allegation that Plaintiff Jackson ever complained to Defendants or gave Defendants a reasonable chance to address or remedy the situation. *See* Kilgore, 93 F.2d at 754. These allegations are not sufficient to raise a right to relief above the speculative level. Therefore, the constructive discharge claim as to Plaintiff Jackson is due to be dismissed.

## III.   CONCLUSION

Defendants' Motion to Dismiss (Doc. 10) and Plaintiffs' Motion to Amend Complaint (Doc. 16) are both granted in part and denied in part. The constructive discharge claims of Plaintiffs Ryan Buie, Maleah Caldwell, Fiona Dawson, Eric Martin, Lathaca Wheeler, Linda Wheeler, Victor Williams, Jimmy Boatwright, Tyree Sinclair, and Stephanie Jackson are to be dismissed; thus, to that extent Defendants' Motion to

---

[3] Plaintiffs have now had two opportunities to tell the Court what these alleged less desirable

Dismiss is granted, and Plaintiffs' Motion to Amend is denied. However, the remaining additions in the proposed amended complaint will be allowed to stand, and to that extent Defendants' Motion to Dismiss is denied, and Plaintiffs' Motion to Amend is granted. The parties are ordered to file their Rules 16 and 26 report no later than July 1, 2013.

       **SO ORDERED**, this the 18th day of June, 2013.

                                                     */s/ Hugh Lawson*
                                                     **HUGH LAWSON, SENIOR JUDGE**

mbh

---

tasks are but have failed to do so.