UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF GEORGIA
VALDOSTA DIVISION

| | | |
|---|---|---|
| KATHERN BENTLEY, JEFFREY ADAMS, JIMMY BOATWRIGHT, RYAN BUIE, MALEAH CALDWELL, JONATHAN DANIELS, FIONA DAWSON, RACHEL FLEMMING, MARY JO FULLER, JOHNNY GARY, DENISE HOPKINS, STEPHANIE JACKSON, DANNY KING, ERIC MARTIN, MARCUS MOORE, KASHONDA WALKER, TYREE SINCLAIR, DANA SPRADLEY, MARGARET SUTTON, ANDREA WARE, TAWON WARREN, LATHACA WHEELER, LINDA WHEELER, and VICTOR WILLIAMS, | : : : : : : : : : : : : : : : : : : : : : | Civil Action No.: 7:12-cv-132 |
| Plaintiffs, | : : | |
| vs. | : : | |
| RODNEY BAKER and JEROD BAKER, individually, d/b/a J & R BAKER FARMS, LLC, and/or J & R FARMS PARTNERSHIP, | : : : : : | |
| Defendants. | : | |

## AMENDED COMPLAINT

## PRELIMINARY STATEMENT

1.     Plaintiffs are residents of South Georgia who worked for Defendants' farm

operations in and around Colquitt County in 2010 and 2011. Defendants

discriminated against Plaintiffs by requiring them to meet a production standard that

Defendants did not disclose to workers, that was not approved by the government,

and that on information and belief Defendants did not require of the Mexican

workers and did not apply in the same manner to the Mexican workers. Defendants

eventually fired most Plaintiffs while retaining their Mexican workers. Plaintiffs bring claims under 42 U.S.C. § 1981 to correct these unlawful employment practices.

2.    Plaintiffs seek their lost and unpaid wages; liquidated damages; actual, incidental, consequential, compensatory damages, and punitive damages; pre- and post-judgment interest, reasonable attorneys' fees and costs, and declaratory and injunctive relief.

## I.    JURISDICTION AND VENUE

3.    This Court has jurisdiction of this action pursuant to:

    a.    28 U.S.C. § 1331 (Federal Question);

    b.    29 U.S.C. § 1337 (Interstate Commerce); and

    c.    28 U.S.C. § 1343 (Civil Rights).

4.    Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) and M.D. Ga. Local Rule 3.4, because a substantial part of the claims arose in the Middle District of Georgia and because the Defendants reside there.

5.    This Court is empowered to grant declaratory relief pursuant to 28 U.S.C. §§ 2201 and 2202.

## II.    PARTIES

6.    Plaintiffs Jeffrey Adams, Jimmy Boatwright, Ryan Buie, Maleah Caldwell, Jonathan Daniels, Fiona Dawson, Rachel Flemming, Mary Jo Fuller, Johnny Gary, Denise Hopkins, Danny King, Eric Martin, Marcus Moore, Kashonda Walker (maiden name Sinclair), Tyree Sinclair, Dana Spradley, Margaret Sutton, Andrea Ware, Tawon Warren, Lathaca Wheeler, Linda Wheeler, and Victor Williams are of United States

national origin and citizenship (American) and African-American (black) and were employed by Defendants in 2010.

7.     Plaintiff Kathern Bentley is of United States national origin and citizenship (American) and Caucasian (white) and was employed by Defendants in 2010.

8.     Plaintiff Stephanie Jackson is of United States national origin and citizenship (American) and African-American (black) and was employed by Defendants in 2011.

9.     Plaintiffs Jeffrey Adams, Kathern Bentley, Jonathan Daniels, Rachel Flemming, Mary Jo Fuller, Johnny Gary, Denise Hopkins, Danny King, Marcus Moore, Kashonda Walker (maiden name Sinclair), Dana Spradley, Margaret Sutton, Andrea Ware, and Tawon Warren assert claims for wrongful termination and discriminatory terms and conditions of employment.

10.     Plaintiffs Jimmy Boatwright, Ryan Buie, Maleah Caldwell, Fiona Dawson, Stephanie Jackson Eric Martin, Lathaca Wheeler, Linda Wheeler, Victor Williams, and Tyree Sinclair assert claims for discriminatory terms and conditions of employment. Their claims for constructive discharge were dismissed by the Court. Doc. 21.

11.     Defendants are individuals residing in or around Norman Park, Georgia.

12.     At all times relevant to this action, Defendants had the power to hire and fire Plaintiffs and had control over their conditions of employment.

13.     Defendants are day-to-day managers with operational control over the agricultural operations doing business as J&R Baker Farms and/or J&R Baker Farms Partnership.

14.     At all times relevant to this action, Defendants were engaged in the packing and

production of produce in and around Colquitt County, Georgia, for sale in interstate

commerce.

### III.     THE H-2A PROGRAM AND PLAINTIFFS' EMPLOYMENT CONTRACTS

15.     An agricultural employer in the United States may import H-2A workers if the

United States Department of Labor ("U.S. DOL") certifies that (1) there are not

enough U.S. workers to perform the job and (2) the employment of H-2A workers

will not adversely affect the wages and working conditions of U.S. workers who are

similarly employed. 8 U.S.C. § 1101(a)(15)(H)(ii)(a); 8 U.S.C. § 1188(a)(1). These

provisions, along with the implementing regulations, are commonly referred to as the

"H-2A program."

16.     Employers requesting H-2A workers must file a temporary labor certification

application with the U.S. DOL's Employment and Training Administration. 20

C.F.R. § 655.130. The application has to include a job offer, known as a "job order,"

that complies with the requirements of 20 C.F.R. § 655.122 and 20 C.F.R. § 653.501.

20 C.F.R. § 655.121(a)(3). The job order contains the terms to be offered to both

foreign H-2A workers and U.S. workers. *See* 20 C.F.R. § 655.122(a).

17.     A job order must contain all material terms and conditions of employment and is

reviewed by the state and federal DOL to ensure the terms offered are the prevailing

terms in the industry. 20 C.F.R. § 653.501(d)(3) and (4).

18.     Where an agricultural employer seeks foreign workers under the H-2A program, the

terms of the job order establish the minimum terms and conditions for employment

for all agricultural workers similarly employed.

4

19.    An employer using H-2A workers must offer U.S. workers no less than the same benefits, wages, and working conditions that it offers to H-2A workers and must not impose any restrictions or obligations on U.S. workers that it does not impose on H-2A workers. 20 C.F.R. § 655.122(a).

20.    As part of its application for foreign workers, the employer must certify to the U.S. DOL, under penalty of perjury, that the job positions are and have been open to U.S. workers. 20 C.F.R. § 655.135(a).

21.    At all times relevant to this action, Plaintiffs were "U.S. workers" as defined by 20 C.F.R. § 655.103(b).

22.    Defendants, as participants in the H-2A program, were required to prefer U.S. workers over foreign workers until 50 percent of the period of the work contract had elapsed. 20 C.F.R. § 655.135(d).

23.    In 2010 and 2011, Defendants submitted job orders to the U.S. DOL.

24.    The 2010 and 2011 job orders' "Employer's Certification" sections were signed by Defendant Jerod Baker. Exs. A and B at ETA 790 § 26.

25.    The 2010 job order offered forty (40) hours of work per week and the 2011 job order offered forty-five (45)  hours of work per week. Exs. A and B at ETA 790 at Item 11.

26.    The 2010 and 2011 job orders offered a wage of $9.11 per hour. Ex. A at Item 16 (page 16) and Ex. B at Item 16 (page 4). The 2011 wage rate increased to $9.12 per hour by a U.S. Department of Labor publication on March 1, 2011.  76 Fed. Reg. 11286 (Mar. 1, 2011).

27.     The 2010 and 2011 job orders contained a term that workers had to "keep up with fellow workers" but did not specify any minimum standard for production. *See* Exs. A and B at "Work Rules" No. 17.

### IV.     STATEMENT OF FACTS

28.     In each season relevant to this complaint, Defendants imported at least 80 Hispanic workers of Mexican national origin ("Mexican workers") under H-2A job orders for planting and harvesting vegetables.

29.     For the Fall 2010 season, Defendants certified to the U.S. DOL that they were experiencing a shortage of American workers and filed job order number GA 7868027 requesting 80 workers for the period September 10, 2010, to January 15, 2011. A copy of the Fall 2010 job order is attached as Exhibit A.

30.     Plaintiffs Jeffrey Adams, Kathern Bentley, Jimmy Boatwright, Ryan Buie, Maleah Caldwell, Jonathan Daniels, Fiona Dawson, Rachel Flemming, Mary Jo Fuller, Johnny Gary, Denise Hopkins, Danny King, Eric Martin, Marcus Moore, Kashonda Sinclair, Tyree Sinclair, Dana Spradley, Margaret Sutton, Andrea Ware, Tawon Warren, Lathaca Wheeler, Linda Wheeler, and Victor Williams were qualified for and employed under the terms of the Fall 2010 job order.

31.     For the Spring 2011 season, Defendants certified that they were experiencing a shortage of workers and filed job order number GA 7923738 requesting 135 workers for the period April 16, 2011, to July 15, 2011. A copy of the Spring 2011 job order is attached as Exhibit B.

32.     Plaintiff Stephanie Jackson was qualified for and employed under the terms of the Spring 2011 job order.

33.     Sheila Booth is employed by Defendants as the Human Resources Director ("H.R. Dir.") and was directly in charge of Plaintiffs' hiring and orientation, performed Plaintiffs' pay calculations, and distributed paychecks to Plaintiffs.

34.     Defendants personally oversaw H.R. Dir. Booth and directed her actions regarding Plaintiffs' employment.

<u>Fall 2010 Season</u>

35.     Plaintiffs identified in Paragraph 30 began work in the last week of September of 2010.

36.     In an effort to discourage American applicants, Defendants structured the workweek of the U.S. workers, including Plaintiffs, so that they would receive little work and limited compensation. Defendants' employees also repeatedly threatened Plaintiffs with termination in a "test" environment against a production standard not contained in the job order and which, on information and belief, Defendants had created specifically for the U.S. workers and had not applied to the Mexican workers.

37.     Defendants created a week long test period for picking squash that was designed to provide little compensation, significant threat of termination, and ultimately to discourage or terminate the American workers, including Plaintiffs.

38.     Upon information and belief, this test period was only applied to American workers, while the Mexican workers were receiving the full hours promised in the employment contracts.

39.     The first day for the 2010 Plaintiffs began Monday, September  27, at 7 am at the J&R Baker Farms office located some distance from any town and from any Plaintiffs' residence.

40.     The first day consisted of an uncompensated, mandatory orientation. Plaintiffs were not given any hours of work on this day and were not paid for their time attending the orientation.

41.     During the orientation, Plaintiffs were told to arrive at the farm at 7 am on Tuesday, September 28.

42.     After arriving at 7 am on September 28, Plaintiffs were required to wait for more than thirty (30) minutes until Defendants sent a bus to transport them to the fields.

43.     Plaintiffs could not ride to the field earlier because Defendants separated their workforce by citizenship and race, and sent the bus to the field with Mexican workers first, requiring the U.S. workers to wait and ride a bus only with other American workers.

44.     On September 28, Plaintiffs were told that they would not be paid the hourly wage offered in the contract, but instead were falsely told they would be paid only $1 for every bucket of squash that they picked, even if a worker only picked one bucket per hour or per day.

45.     Plaintiffs who complained about this new compensation structure were told it would not be changed.

46.     On September 28, Plaintiffs were also told, for the first time, that they would be subject to a test of their speed in picking squash and would be terminated if they did not pass the test.

47.     During the test period Defendants required Plaintiffs to pick nine buckets of squash in one hour, a production standard that was not a term of their employment contracts.

48.     On information and belief, Defendants did not require their Mexican workers to meet the production standard described in Paragraph 47 and did not subject the Mexican workers to a week of extremely limited work while they were "tested" against the production standard.

49.     While picking squash, Plaintiffs were required to pick up an empty bucket from a tractor and return the bucket to the tractor full of squash. The tractor did not follow Plaintiffs and other American workers as they picked.

50.     Mexican workers were followed by a tractor, shortening the time to return picked squash to the tractor and get an empty bucket, allowing the Mexican workers to pick squash more quickly than the American workers.

51.     On September 28, Plaintiffs worked in the fields for far less than a full day, under two and a half hours, and then were sent home for the day.

52.     Mexican workers were still working after Plaintiffs were sent home on Tuesday, September 28 as described in Paragraph 51.

53.     In keeping with Defendants' scheme to force Plaintiffs to quit or to strongly indicate they would be fired, and to restrict their compensation, Plaintiffs, after working fewer than two and a half hours on Tuesday, were told that there was no work for them the following day, Wednesday, September 29, but that they should report to work at 7 am on Thursday, September 30.

54.     On information and belief, Mexican workers were provided work daily and not just on alternating days.

55.     After arriving at the farm at 7 am on September 30, Plaintiffs again waited at least thirty (30) minutes to be transported to the fields after Mexican workers had already been bused to fields to begin work.

56.     Plaintiffs again were allowed to work only a short time, fewer than two and a half hours, as they were again subject to a test on September 30 and were sent home early for the day.

57.     Again, Mexican workers were still working when Plaintiffs were sent home on September 30.

58.     On September 30 Plaintiffs were told there was no work the next day, Friday October 1, but they should report to work at 7 am on Saturday, October 2.

59.     After arriving at the farm at 7 am on October 2, Plaintiffs waited for approximately one hour before being told there was no work for them that day and they should return home.

60.     Through the conduct listed in Paragraphs 36 to 59 Defendants had required Plaintiffs to report to the farm four times but had only provided Plaintiffs compensation for two of these times, and even then, in total had provided Plaintiffs five or fewer hours of total compensation for the week.

61.     On Monday, October 4, most 2010 Plaintiffs again arrived at the farm around 7 am and waited to be transported to the fields after the Mexicans. After working a short time, the American workers were assembled and told that if they had not picked 9 buckets of squash in one hour they were fired.

62.     On October 4, 2010, Defendants fired Plaintiffs Kathern Bentley, Jeffrey Adams, Jonathan Daniels, Mary Jo Fuller, Johnny Gary, Denise Hopkins, Danny King,

Marcus Moore, Kashonda Walker, Dana Spradley, Margaret Sutton, and Andrea Ware.

63.     A few days after the firings on October 4, Plaintiff Jimmy Boatwright asked H.R. Dir. Booth about hours missing from his paycheck. H.R. Dir. Booth refused to correct Plaintiff Jimmy Boatwright's paycheck and told him he should not return to work if he felt his check was wrong.

64.     A few days after the firings on October 4, Plaintiff Tawon Warren was fired after voicing complaints about the hours on his paystub.

65.     Approximately two weeks after the firings on October 4, Plaintiff Rachel Flemming was fired. Plaintiff Rachel Flemming was not given a reason for her firing.

66.     Before the end of the Fall 2010 season, nearly all of Defendants' white or black American workers had been fired or quit because of the working conditions.

67.     Upon information and belief, few to none of Defendants' Mexican workers were fired or quit in the Fall 2010 season.

<u>Spring 2011 Season</u>

68.     In the Spring of 2011, Defendants assigned Plaintiff Stephanie Jackson to less desirable tasks in the packing shed than those assigned to female, Mexican workers.

69.     Defendants frequently changed Plaintiff Stephanie Jackson's work schedule and sent her home with no work after instructing her to report to work.

70.     On information and belief, Mexican workers had a regular work schedule and were not sent home for the day without receiving any work.

71.     Plaintiff Stephanie Jackson worked approximately six weeks of the Spring 2011 season.

11

72.     Before the end of the Spring 2011 season, nearly all of Defendants' white or black American workers had been fired or quit.

73.     On information and belief, few to none of Defendants' Mexican workers were fired or quit in the Spring 2011 season.

## COUNT I

### DISCRIMINATION IN CONTRACT

74.     Plaintiffs incorporate each of the allegations contained in Paragraphs 1 through 73 above by reference.

75.     Plaintiffs, members of a protected class, assert this claim pursuant to 42 U.S.C. § 1981, as amended by the Civil Rights Act of 1991, against all Defendants.

76.     Defendants intentionally discriminated against Plaintiffs in their employment contracts by imposing discriminatory terms of employment, working conditions and denying them the benefits, privileges, terms, and conditions of the contractual relationship, by assigning work differentially, and by seeking to enforce employment standards against Plaintiffs not enforced against the foreign, Hispanic, Mexican workers, based upon their race and lack of alienage in favor of the foreign, Hispanic, Mexican workers as set forth in Paragraphs 35 through 73.

77.     Defendants further intentionally discriminated against the Plaintiffs identified in Paragraph 9 by terminating Plaintiffs based upon their race and lack of alienage in favor of the foreign, Hispanic, Mexican workers as set forth in Paragraphs 35 through 67.

78.     Defendants' actions violated the Plaintiffs' rights to make and enforce contracts and receive full and equal benefit of the law as guaranteed by 42 U.S.C. § 1981.

79.    Plaintiffs' rights under 42 U.S.C. § 1981 to make and enforce contracts were clearly established at the time Defendants discriminated against Plaintiffs.

80.    Defendants' conduct intentionally and impermissibly favored foreign, Hispanic, Mexican workers over Plaintiffs in the making and enforcement of employment contracts in violation of 42 U.S.C. § 1981.

81.    As a direct result of Defendants' actions, Plaintiffs were subjected to discriminatory terms and conditions of employment and/or wrongfully terminated and have suffered substantial damages.

82.    Defendants exhibited oppression, malice, gross negligence, willful or wanton misconduct, or reckless disregard for the Plaintiffs' civil rights so as to entitle the Plaintiffs to an award of punitive damages to punish Defendants for their conduct and to deter Defendants and others like them from such conduct in the future.

83.    Plaintiffs seek all appropriate relief, including back pay, declaratory and injunctive relief, attorneys' fees and costs of this action pursuant to 42 U.S.C. § 1988, and damages, including compensatory and punitive damages, in an amount to be determined at trial.

**PRAYERS FOR RELIEF**

WHEREFORE, Plaintiffs respectfully request that this Court grant them the following relief:

(a)  Under Count I:

1.  Grant judgment against all Defendants and in favor of each Plaintiff  in the amount of his or her respective back wages as proved at trial, plus prejudgment interest;

13

2. Appropriate injunctive and declaratory relief, including a permanent injunction enjoining all Defendants, their officers, successors, assigns, and all persons in active concert or participation with them, from engaging in alienage discrimination or race discrimination and any other employment practice which discriminates on the basis of alienage or race;

3. Punitive damages in an amount to be determined at trial;

4. Court costs, including discretionary costs;

5. An award of reasonable attorneys' fees;

(b) Award Plaintiffs pre- and post-judgment interest as allowed by law;

(c) Cast all costs upon Defendants; and

(d) Award Plaintiffs such further relief, at law or in equity, as this Court deems just and proper.

Respectfully submitted this 12th day of July, 2013,

_____/s Leah Lotto_____
Leah Lotto
Georgia Bar No. 940599
Dawson Morton
Georgia Bar No. 525985
Lisa Krisher
Georgia Bar No. 429762
104 Marietta Street NW, Suite 250
Atlanta, GA  30303
Phone:  (404) 463-1633
Fax:      (404) 463-1623

Attorneys for Plaintiffs

14

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that I have on this 12th day of July, 2013, electronically filed with the Clerk of the Court the foregoing Amended Complaint. The Court, using the CM/ECF system, will send a copy to:

> J. Larry Stine
> Ray Perez
> WIMBERLY, LAWSON, STECKEL,
> SCHNEIDER & STINE, P.C.
> Suite 400, Lenox Towers
> 3400 Peachtree Road, N.E.
> Atlanta, Georgia 30326
> jls@wimlaw.com
> rp@wimlaw.com
>
> Counsel for Defendants

> _____/s Leah Lotto_____
> Counsel for Plaintiffs

15